**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   MOHAMED ABOKASEM, et al.,                No. C-10-01781 MMC

12            Plaintiffs,                     **ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANTS'**
13      v.                                    **MOTION TO DISMISS PLAINTIFFS'
                                              FIRST AMENDED COMPLAINT;**
14   ROYAL INDIAN RAJ INTERNATIONAL           **GRANTING LEAVE TO AMEND;**
     CORP., et al.,                           **CONTINUING CASE MANAGEMENT**
15                                            **CONFERENCE**
              Defendants
16   _____/

17

18        Before the Court is defendants Royal Indian Raj International Corp. ("RIRIC"), Royal

19   Indian Raj International Holdings Corp. ("RIR Holdings"), Royal Indian Raj International

20   Real Estate Fund Ltd. ("RIR Real Estate"), Royal Garden Villas Resort Corp. ("Royal

21   Garden"), Manoj C. Benjamin, Anjula Benjamin, Maya Benjamin, and Janet MacFarlane's

22   (collectively, "RIRIC defendants") motion, filed October 12, 2010, to dismiss plaintiffs

23   Mohamed Abokasem, Rathnakumar Badhan, Vinay Dilawri, Ashley Gilson, Greg Gilson,

24   Krishna Kudva, Vidya Kudva, Archana Kudva, Sujoy Majumdar, Anil Mital, Ajith Nair, Jiji

25   Nair, Radhika Nair, Ranjit Nair, Ravinder Prakash, Hemant Prakash, Indrajit Roy, Sushma

26   Roy, Madhumita Sarkar, Kirshna Shankar, Radhika Shankar, Manonmani Thangapandian,

27   Dhiraj Tyagi, and Jyoti Tyagi's (collectively, "plaintiffs") First Amended Complaint ("FAC").

28   Plaintiffs have filed opposition, to which the RIRIC defendants have replied.  Having read

     and considered the papers filed in support of and in opposition to the motion, the Court

1  rules as follows.[1]

2                              **BACKGROUND**

3        As alleged in the FAC, the instant action arises out of a RIRIC project to construct "a

4  $3 billion European-style sub-city development named Royal Garden City between

5  downtown Bangalore and the new Bangalore International Airport" in southern India (see

6  FAC ¶ 36), and, in particular, plaintiffs' down payments for housing units in a "residential

7  resort community named Royal Garden Villas & Resort" ("RGVR Project"), marketed as an

8  "exclusive, high-end development that would feature all of the amenities traditionally

9  associated with a five-star resort; including world-class spa, state-of-the-art fitness center,

10 luxurious clubhouse and pool pavilion, Tuscan-style village square and international shops

11 and restaurants, supermarkets, movie theaters, chateau winery, equestrian center, tennis

12 center affiliated with Indian tennis star Vijay Amritraj and a Jack Nicklaus Signature 18-hole

13 championship golf course" (see FAC ¶ 38).

14       Plaintiffs allege that, between June 2006 and November 2007, they signed booking

15 agreements with Royal Garden City Enterprises Private Ltd. ("RGCEPL") and paid a

16 deposit toward a housing unit in the above-described development (see  FAC ¶¶ 49, 60,

17 67, 77, 92, 98, 106, 121, 130, 138, 146, 154, 162, 170);[2] that each said booking agreement

18 contained a clause providing the right to a refund of the deposit in the event that the project

19 did not receive necessary clearances from the Indian government (see FAC ¶¶ 54, 64, 72,

20 81,103, 111, 126, 135, 143, 151, 159, 167, 175), and, as to seven of the plaintiffs, an

21 additional requirement that the deposit be held in "an escrow account under the name of

22 RGCEPL" (see FAC ¶ 119); that, when the project failed to receive the necessary

23 government clearances within the period specified, each plaintiff, between March 2008 and

24

25       [1]  On February 1, 2011, the Court took the matter under submission and vacated the
26 hearing scheduled for February 4, 2011.

27       [2]  Plaintiffs allege that, with the exception of defendant Manoj Benjamin, the
   signatories for RGCEPL, which is not a party to the instant motion, were officers of RIRIC
28 and not of RGCEPL.  (See FAC ¶¶ 49, 60, 67, 77, 92, 98, 121, 130, 138, 146, 154, 162,
   170.)

August 2009, exercised his/her right under the booking agreement and requested a refund of the deposit (see FAC ¶¶ 55, 65, 73, 90, 96, 104, 112, 127, 136, 144, 152, 160, 168, 176); that, as to two plaintiffs, RIRIC executed a promissory note agreeing to pay a total refund by January 2, 2009  (see FAC ¶ 116); and that, as of the date of the filing of the FAC, no portion of any deposit has been refunded to plaintiffs (see FAC ¶¶ 59, 66, 76, 91, 97, 105, 117, 129, 137, 145, 153, 161, 169, 177).

Plaintiffs further allege that defendants made various false or misleading statements regarding RIRIC and the RGVR Project that induced them to invest the project, specifically, statements (1) misrepresenting "RIRIC's land holdings in India"; (2) misrepresenting "RIRIC's capital base, its access to construction financing for the RGVR Project and its purported plans to seek a listing on a major stock exchange"; (3) misrepresenting "the status of RIRIC's effort to obtain approval from [the Indian Government] for the RGVR Project"; (4) "[p]roviding dates for construction of the RGVR Project to begin that were known to be unrealistic and unattainable"; (5) "[e]xagerating sales volume of units in the RGVR Project"; (6) "[u]sing the names and images of celebrities in marketing for the RGVR Project without ever obtaining consent and/or after such endorsements had been withdrawn"; (7) misrepresenting "the status of RIRIC's relationships with its business projects"; (8) misrepresenting "the personal background and professional experience of RIRIC's management"; and (9) making "[f]alse promises . . . that [plaintiffs'] deposits would be held in an escrow account, and would not be accessed until 'all conditions of sale had been met'" (see FAC ¶183, see also id. ¶¶ 184-258.)

On the basis of the above allegations, plaintiffs assert, as against all defendants, claims for (1) "breach of contract: failure to refund payments upon request as required by booking agreements," (2) "breach of contract: Tyagi Promissory Note," (3) "breach of contract:  failure to hold funds in escrow as required by booking agreements," (4) "negligence: performance as escrow holder," (5) "breach of fiduciary duty:  performance as escrow holder," (6) "fraud:  inducement to sign booking agreements," and (7) "negligent misrepresentation: inducement to sign booking agreements"; and, as against all defendants

1   except RGCEPL, (8) "unjust enrichment, receipt of money paid pursuant to booking

2   agreements."  (See FAC ¶¶ 291-354.)

3                                    **DISCUSSION**

4            The RIRIC defendants move to dismiss the FAC on the following grounds:

5   (1) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal

6   jurisdiction, (2) for forum non conveniens, (3) pursuant to Rule 12(b)(3), for improper

7   venue, on the basis of the booking agreement's forum selection clause, and (4), as to

8   plaintiffs' claims of fraud and negligent misrepresentation, pursuant to Rule 12(b)(6), for

9   failure to state a claim upon which relief can be granted.

10  **I.        Personal Jurisdiction**

11           The RIRIC defendants contend this Court does not have jurisdiction over any of

12  them, and, in the alternative, that the Court does not have jurisdiction over any of the

13  individual defendants on either an alter ego or agency theory.  (See Mot. 3:7-11:2).

14  Personal jurisdiction may be either "general," see Helicopteros Nacionales de Colombia,

15  S.A. v. Hall, 466 U.S. 408, 415 n.9 (1984), or "specific," see Schwarzenegger v. Fred

16  Martin Motor Co., 374 F.3d 797, 801-02 (9th Cir. 2004).  Plaintiffs argue the FAC alleges

17  sufficient uncontroverted facts to support the Court's exercise of specific personal

18  jurisdiction over the defendants, either directly or on the basis of alter ego or agency.[3]  (See

19  Opp. 6:11-14:6).

20           Where no federal statute governing personal jurisdiction is applicable, a district court

21  "applies the law of the state in which the district court sits."  Dole Food Co., Inc. v. Watts,

22  303 F.3d 1104, 1110 (9th Cir. 2002).  Under California law, personal jurisdiction may be

23  exercised "on any basis not inconsistent with the Constitution of this state or of the United

24  States," see Cal. Code Civ. Proc. § 410.10, which provision is "coextensive with federal due

25  process requirements," Dole Food, 303 F.3d at 1110.  Specific personal jurisdiction may be

26

27           [3]  General jurisdiction typically requires "continuous and systematic general business
28  contacts" with the forum.  Helicopteros, 406 U.S. at 416.  Plaintiffs do not argue  the RIRIC
    defendants are subject to general personal jurisdiction.

exercised over a nonresident defendant when the following conditions are met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

Id. at 1111.

The plaintiff "bear[s] the burden of demonstrating that jurisdiction is appropriate." Id. at 1108. Where the question of jurisdiction is resolved "based on written submissions rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." Id. (internal quotation and citation omitted). "In such cases, we only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction"; "uncontroverted allegations in the complaint must be taken as true" and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Id. (internal quotations and citations omitted). Nonetheless, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007) (finding allegations that defendants "directed communication into" forum and "otherwise conducted business therein sufficient to establish minimum contacts" insufficient to plead personal jurisdiction).

### A.     Purposeful Availment

Where, as here, the complaint alleges an intentional tort, the district court, to determine whether a defendant purposefully availed himself of the privileges and protections of the forum state, applies the "effects" test derived from Calder v. Jones, 465 U.S. 783 (1984). See Dole Food, 303 F.3d at 1111. "[T]he 'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

Id.

### 1.     Corporate RIRIC Defendants

The FAC sufficiently alleges RIRIC committed intentional acts that were expressly aimed at California and which caused harm RIRIC knew was likely to be suffered in California.  Specifically, plaintiffs allege that RIRIC maintained a website that was accessible to the California plaintiffs and by which it advertised the RGVR Project, and that RIRIC published other project-related advertising available to California plaintiffs (see FAC ¶¶ 50, 61, 68, 99, 107, 171); the website and marketing materials contained misrepresentations and misleading statements by RIRIC known by RIRIC to be false (see, e.g., FAC ¶¶ 184, 188, 191, 199, 202, 204); RIRIC reiterated its misrepresentations in telephone conversations and written correspondence with plaintiffs, including California plaintiffs (see FAC ¶ 185; Decl. of Krishna Kudva in Opp. to Defs.' Mot. to Dismiss ("Kudva Decl.") ¶ 4); four California plaintiffs met with a sales representative of RIRIC in California to discuss investing in the project (see FAC ¶¶ 68, 107); two California plaintiffs met with defendants Manoj Benjamin and Collins Benjamin, both officials of RIRIC, in California (see FAC ¶¶ 22, 23,171); an agent of RIRIC had a booking agreement sent by courier to the home of at least one California plaintiff (Kudva Decl. ¶ 6, Ex. C); the California plaintiffs entered into booking agreements, signed by agents of RIRIC (see FAC ¶¶ 49, 60, 67, 98, 106, 170); and RIRIC executed a promissory note for the benefit of two California plaintiffs, incurring an obligation to refund their deposits (see FAC ¶ 115).  Further, plaintiffs sufficiently allege that RIRIC, through such contacts, induced the California plaintiffs to rely on RIRIC's misrepresentations and enter into contracts that were at least partially negotiated in California, and that the resulting breach of those contracts caused harm RIRIC knew was likely to be suffered in California.

Accordingly, plaintiffs have met their burden to show that RIRIC purposefully availed itself of the benefits and protections of California's laws.  See Calder, 465 U.S. at 790 (finding personal jurisdiction where defendant "knowingly cause[d] the injury in California"); Rio Properties v. Rio Int'l Interlink, 284 F.3d 1007, 1020 (9th Cir. 2002) (holding personal

1    jurisdiction over operator of passive website satisfied where operator engages in

2    "something more," e.g., radio and print advertising in forum state); <u>Bancroft & Masters, Inc.</u>

3    <u>v. Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1088 (9th Cir. 2000) (holding requirement of "express

4    aiming" satisfied where "defendant is alleged to have engaged in wrongful conduct targeted

5    at a plaintiff whom the defendant knows to be a resident of the forum state"); <u>Peterson v.</u>

6    <u>Highland Music, Inc.</u>, 140 F.3d 1313, 1320 (9th Cir. 1998) (holding, in finding personal

7    jurisdiction on contract claim satisfied, "[c]ontract negotiations are classic examples of the

8    sort of contact that can give rise to <u>in personam</u> jurisdiction" (emphasis in original)); <u>Data</u>

9    <u>Disc, Inc. v. Sys. Tech. Assoc., Inc.</u>, 557 F.2d 1280, 1288 (9th Cir. 1977) ("The

10   inducement of reliance in California is a sufficient act within California to satisfy the

11   requirement of minimum contacts where the cause of action arises out of that

12   inducement.").

13       Plaintiffs contend purposeful availment is shown as to the remaining corporate

14   RIRIC defendants because they are alter egos or agents of RIRIC.  (<u>See</u> Opp. 9:11-10:13,

15   13:18-6); <u>see also</u> <u>Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.</u>, 328 F.3d

16   1122, 1134 (9th Cir. 2003) (noting, "a subsidiary's contacts may be imputed to the parent

17   where the subsidiary is the parent's alter ego, or where the subsidiary acts as the general

18   agent of the parent").  The RIRIC defendants do not controvert the FAC's alter ego and

19   agency allegations as to the other corporate RIRIC defendants, nor do they otherwise

20   counter plaintiffs' assertions of personal jurisdiction on the basis of alter ego or agency.

21       Accordingly, plaintiffs likewise have sufficiently shown that RIR Holdings, RIR Real

22   Estate, and Royal Garden purposefully availed themselves of the benefits and protections

23   of California's laws.

24                    **2.    Individual RIRIC Defendants**

25       The four individual RIRIC defendants, Manoj C. Benjamin, Anjula Benjamin, Maya

26   Benjamin, and Janet MacFarlane, argue that plaintiffs have not made a sufficient showing

27   of personal jurisdiction over them, either directly or under a theory of alter ego or agency.

28   As set forth below, the Court finds plaintiffs have made a sufficient showing as to

                                         7

defendants Manoj Benjamin and Anjula Benjamin, but not as to the remaining two

individual defendants.

### a.    Manoj Benjamin and Anjula Benjamin

Plaintiffs' allegations, uncontroverted by the RIRIC defendants, show: Manoj

Benjamin is Chairman of the Board and CEO of RIRIC, as well as an officer and director of

RGCEPL and the sole director and officer of the other corporate RIRIC defendants (see

FAC ¶ 22); he supervised the booking agreement negotiations with at least four of the

California plaintiffs (see FAC ¶¶ 108, 172); he traveled to California and held discussions

with two of the California plaintiffs (see FAC ¶ 171); he signed the booking agreement with

two of the California plaintiffs (see FAC ¶ 106); he executed the above-referenced

promissory note (see FAC ¶ 115); and he made misleading or false statements about the

land owned by RIRIC and the volume of sales in the RGVR Project, on which the California

plaintiffs relied (see FAC ¶¶ 184, 191,198, 220, 223).  Plaintiffs sufficiently show Manoj

Benjamin, through these contacts, induced the California plaintiffs to rely on his

misrepresentations and enter into contracts at least partially negotiated in California, and

that the resulting breach of those contracts caused harm Manoj Benjamin knew would likely

be suffered in California.

Next, plaintiffs' have submitted a declaration showing that Anjula Benjamin was the

"primary contact" of at least one plaintiff, Krishna Kudva ("Kudva").  (See Kudva Decl. ¶ 4;

see also Comp. ¶ 61.)  Specifically, Kudva asserts that Anjula Benjamin was "in regular e-

mail contact" with Kudva (see Kudva Decl. ¶ 4), forwarded allegedly fraudulent RIRIC

marketing materials to Kudva (see id.), personally made allegedly fraudulent or negligent

misrepresentations to Kudva regarding the RGVR Project that "were essential to [Kudva's]

decision to purchase a unit in the" RGVR Project (see id. ¶¶ 5, 9, 10, 11), and had the

booking agreement sent to Kudva's address in California (see id. ¶ 6).  Although, as the

RIRIC defendants note, these contacts were made on behalf of her employer, Anjula

Benjamin's "status as [an] employee[] does not somehow insulate [her] from jurisdiction";

rather, "[e]ach defendant's contacts with the forum State must be assessed individually."

1  See Calder, 465 U.S. at 790 (finding personal jurisdiction in California over employees

2  residing in Florida for actions taken within scope of their employment).  Plaintiffs have

3  sufficiently shown that Anjula Benjamin, through the above contacts, induced at least one

4  California plaintiff to rely on her misrepresentations and enter into contracts at least partially

5  negotiated in California, and that the resulting breach of those contracts caused harm

6  Anjula Benjamin knew was likely to be suffered in California.

7  Accordingly, plaintiffs have sufficiently shown that Manoj Benjamin and Anjula

8  Benjamin purposefully availed themselves of the benefits and protections of California's

9  laws.

10  **b.    Maya Benjamin and Janet MacFarlane**

11  Plaintiffs fail to show, however, the exercise of personal jurisdiction over the

12  remaining individual RIRIC defendants, Janet MacFarlane ("MacFarlane") and Maya

13  Benjamin, would be appropriate.  First, with respect to MacFarlane, a sales associate,

14  although plaintiffs dispute MacFarlane's assertion that she "never had any interactions with

15  any of the Plaintiffs" (Decl. of Diane McFadin ("McFadin Decl.") Ex. E (Aff. of Janet

16  MacFarlane)), plaintiffs' evidence shows only a single communication, by email, between

17  MacFarlane and one plaintiff, Krishna Kudva (see Kudva Decl. ¶¶ 16, 17).  Although Kudva

18  declares said communication was false (see Kudva Decl. ¶ 19), plaintiffs do not allege facts

19  or provide evidence showing MacFarlane was aware Kudva resided in California,

20  see Bancroft, 223 F.3d at 1088 (holding "express aiming" sufficiently shown where

21  defendant "knows [plaintiff] to be a resident of the forum state").  Nor does Kudva assert

22  that she relied in any manner on any representation by MacFarlane; indeed, Kudva entered

23  into her booking agreement and paid the full amount due more than two years before the

24  asserted communication with MacFarlane (see FAC ¶¶ 60, 63); see also Farmers Ins.

25  Exchange v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir. 1990) (noting,

26  "[o]nly contacts occurring prior to the event causing the litigation may be considered" in

27  evaluating personal jurisdiction).

28  Plaintiffs' showing as to Maya Benjamin, who, according to her uncontroverted

9

1  affidavit, was an administrative secretary during the relevant period (see McFadin Decl. Ex.

2  C ¶ 4 (Aff. of Maya Benjamin)), is even less persuasive, the sole uncontroverted allegation

3  specific to said defendant being her familial relationship to other defendants (see FAC

4  ¶ 179).  Nor are the FAC's conclusory allegations regarding defendants' contacts with

5  California, or those in support of plaintiffs' alter ego and agency theories, sufficient to

6  support a finding that either MacFarlane or Maya Benjamin purposefully availed herself of

7  the benefits and protections of California's laws. (See e.g., FAC ¶ 179 (alleging Janet

8  MacFarlane "participated" in fraud); FAC ¶ 322 (alleging "[a]ll defendants knowingly

9  participated in the RIRIC Fraud"); FAC ¶ 272 (alleging "Corporate Defendants and

10  Individual Defendants disregarded their separate existence by assuming liability for each

11  other's debts").)

12       Accordingly, as plaintiffs fail to make a sufficient showing to warrant the exercise of

13  personal jurisdiction over either such defendant, the RIRIC defendants' motion to dismiss

14  the action will be granted as to Maya Benjamin and Janet MacFarlane.[4]

15       **B.    Relationship of Claim to Contacts**

16       "The second requirement for specific jurisdiction is that the contacts constituting

17  purposeful availment be the ones that give rise to the current suit."  Bancroft, 223 F.3d at

18  1088 ("We measure this requirement in terms of 'but for' causation."); see also Dole Food,

19  303 F.3d at 1114 (finding claims arose from defendants' contacts with forum where

20  "contacts between [defendants] and the forum state [were] integral and essential parts of

21  the alleged fraudulent scheme on which [plaintiff] base[d] its suit").  Here, but for the RIRIC

22  defendants' contacts with plaintiffs in California, plaintiffs would not have relied upon

23

24       [4]  Plaintiffs fail to provide sufficient evidence to warrant a continuance of the motion
25  for the purpose of conducting additional jurisdictional discovery as to either Maya Benjamin
    or Janet MacFarlane.  See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1160 (9th Cir.
26  2006) (holding "[w]here a plaintiff's claim of personal jurisdiction appears to be both
    attenuated and based on bare allegations in the face of specific denials made by the
27  defendants, the Court need not permit even limited discovery" (internal quotation and
    citation omitted)).  If, however, in the course of discovery or otherwise during the pendency
28  of the above-titled action, plaintiffs develop new facts with respect to either defendant,
    plaintiffs may seek relief from this order by way of appropriate motion.

10

1  defendants' alleged misrepresentations, entered into the booking agreements, or made

2  deposits on homes in the RGVR Project.

3      Accordingly, with respect to those RIRIC defendants as to whom the Court has

4  found purposeful availment, the Court further finds plaintiffs claims against said defendants

5  arise from said defendants' contacts with the forum state.

6      **C.    Reasonableness**

7      "Once it has been decided that a defendant purposefully established minimum

8  contacts with a forum, 'he must present a compelling case that the presence of some other

9  considerations would render jurisdiction unreasonable' in order to defeat personal

10 jurisdiction."  Dole Food, 303 F.3d at 1114 (quoting Burger King Corp. v. Rudzewicz, 471

11 U.S. 462, 477 (1985)).

> In determining whether the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," [courts] consider seven factors under [Ninth Circuit] case law:  (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Id.

19      Here, the RIRIC defendants do not argue, let alone "present a compelling case," that

20 jurisdiction is unreasonable, nor is there anything in the record sufficiently demonstrating

21 that the exercise of personal jurisdiction would be unreasonable in this instance.  Indeed, to

22 the extent the record contains evidence pertaining to the above-referenced factors, those

23 factors weigh in favor of the Court's exercise of jurisdiction.

24      Accordingly, the RIRIC defendants fail to show the exercise of personal jurisdiction

25 would be unreasonable.

26      **D.    Conclusion:  Personal Jurisdiction**

27      For the reasons state above, the Court finds it appropriate to exercise personal

28 jurisdiction over each of the RIRIC defendants with the exception of Janet MacFarlane and

11

1    Maya Benjamin.

2    **II.     Forum Non Conveniens**

3          The RIRIC defendants seek dismissal of the action on the basis of <u>forum non</u>

4    <u>conveniens</u>, contending alternate forums exist in either Bangalore, India, where the RGVR

5    Project is located, or Vancouver, British Columbia, where the majority of the defendants

6    reside.  To prevail on a motion to dismiss on grounds of <u>forum non conveniens</u>, however, a

7    defendant must show not only "that there is an adequate alternative forum," but also "that

8    the balance of private and public interest factors favor dismissal."  <u>Dole Food</u>, 303 F.3d at

9    1118.  "The plaintiff's choice of forum will not be disturbed unless the 'private interest' and

10   'public interest' factors strongly favor trial in the foreign county."  <u>Id.</u>  "When a domestic

11   plaintiff initiates litigation in its home forum, it is presumptively convenient."  <u>Carijano v.</u>

12   <u>Occidental Petroleum Corp.</u>, 626 F.3d 1137, 1148-49 (9th Cir. 2010) (rejecting, for <u>forum</u>

13   <u>non conveniens</u> analysis, proposition that where "both domestic and foreign plaintiffs are

14   present, the strong presumption in favor of the domestic choice of forum is somehow

15   lessened").

16         Here, plaintiffs' choice of forum is the Northern District of California, in which a

17   plurality of plaintiffs reside.  (<u>See</u> FAC ¶¶ 1-14.)  Although Manoj Benjamin on behalf of

18   himself and the RIRIC corporate defendants has consented to jurisdiction in either

19   Bangalore or Vancouver (<u>see</u> Mot. 12:1; McFadin Decl. Ex. F ¶ 8 (Aff. of Manoj Benjamin)),

20   Anjula Benjamin, who remains part of this action, has not so consented (<u>see id.</u> at n.4), nor

21   have the nonmoving defendants, two of whom reside in Bangalore and four of whom reside

22   in Vancouver (<u>see</u> FAC ¶¶ 18, 23, 24, 28, 29, 30).  In other words, the RIRIC defendants

23   have failed to show that either the courts of Bangalore or Vancouver can hear plaintiffs'

24   claims against all of the defendants named in this action.  Consequently, the RIRIC

25   defendants fail to show the existence of an adequate alternative to plaintiffs' chosen forum,

26   obviating the need for the Court to balance the public and private interests involved.  <u>Cf.</u>

27   <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 254 n.22 (1981) (noting, "ordinarily, [the

28   alternative forum] requirement will be satisfied when the defendant is 'amenable to process'

12

1    in the other jurisdiction").

2           Accordingly, the Court will deny the RIRIC defendants' motion to dismiss on the

3    basis of forum non conveniens.

4    **III.    Venue:  Forum Selection Clause**

5           The RIRIC defendants argue the action must be dismissed because each plaintiff's

6    booking agreement contains a forum selection clause specifying Bangalore as the forum in

7    which disputes arising from the agreement are to be heard.  In particular, the clause

8    provides:  "All disputes and settlements will be subject to Bangalore Jurisdiction."[5]  Plaintiffs

9    contend the clause is permissive, i.e., allowing suit to be brought in Bangalore, but not

10   mandatory, i.e., requiring suit be brought only in Bangalore.

11          "The question whether the forum selection clause is mandatory or permissive is a

12   matter of contract interpretation."  N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines

13   Steel Co., 69 F.3d 1034, 1036 (9th Cir. 1995).  "To be mandatory, a clause must contain

14   language that clearly designates a forum as the exclusive one."  Id. at 1037.

15          In that regard, the Court finds instructive the Ninth Circuit's opinion in Hunt Wesson

16   Foods, Inc. v. Supreme Oil Co., 817 F.2d 75 (9th Cir. 1987).  In Hunt, the Ninth Circuit

17   considered a forum selection clause that provided:  "The courts of California, County of

18   Orange, shall have jurisdiction over the parties in any action at law relating to the subject

19   matter or interpretation of this contract."  Id. at 77.  In finding the clause permissive rather

20   than mandatory, the Ninth Circuit observed:

21              The language says nothing about Orange County courts having exclusive
                jurisdiction.  The effect is merely that the parties consent to the jurisdiction
22              of the Orange County courts.  Although the word 'shall' is a mandatory
                term, here it mandates nothing more than that the Orange County courts
23              have jurisdiction. . . .  Such consent to jurisdiction, however, does not
                mean that the same subject matter cannot be litigated in any other court.
24              In other words, the forum selection clause in this case is permissive rather

25   _____

26        [5]  The RIRIC defendants have not submitted a copy of each booking agreement;
     rather, they submit the booking agreement of one plaintiff, Greg Gilson (see Decl. of Diane
27   McFadin Ex. B), and a declaration stating "all of the plaintiffs agreed to a similar provision
     (see id. Ex. F ¶ 6).  With their opposition, plaintiffs submit the booking agreement of plaintiff
28   Krishna Kudva, which likewise contains the above-quoted clause.  (See Kudva Decl. Ex. B
     ¶ 26.)

1    than mandatory.

2    Id.

3         The language at issue here is substantially similar to the language the Ninth Circuit

4    in Hunt held to be permissive.  There is no material distinction between the word "will" in

5    the instant action and the word "shall" in the clause at issue in Hunt, and, as in Hunt, its use

6    "mandates nothing more than that the [noted forum's] courts have jurisdiction."  See id.

7    Moreover, the use of "subject to" in the instant action further indicates the parties only

8    intended the possibility, but not necessity, of suit in Bangalore.  See Black's Law Dictionary

9    1562 (9th ed. 2009) (defining "subject to litigation" as being "susceptible to a lawsuit"

10   (emphasis added)); cf. Radian Int'l, LLC v. Alpina Ins. Co., No. C-04-4537 (SC), 2005 WL

11   1656884, at *2 (N.D. Cal. July 14, 2005) (finding clause requiring "any resolution to a

12   dispute . . . shall be held in Beirut, Lebanon" to be mandatory).  In sum, the forum selection

13   clause contained in plaintiffs' booking agreements does not preclude litigation in other

14   forums.

15        Accordingly, as the subject forum selection clause is permissive rather than

16   mandatory, the RIRIC defendants are not entitled to dismissal based thereon.

17   **IV.    Failure to State A Claim: Fraud and Negligent Misrepresentation**

18        Lastly, the RIRIC defendants move under Rule 12(b)(6) to dismiss the FAC's

19   allegations of fraud and negligent misrepresentation as alleged against defendants RIR

20   Holdings, RIR Real Estate, Royal Garden, Janet MacFarlane, Maya Benjamin, and Anjula

21   Benjamin.[6]  Specifically, the RIRIC defendants argue that plaintiffs "have failed to

22   sufficiently particularize their allegations of fraud, pursuant to Rule 9(b)."  (See Mot. 22:10-

23   11.)

24        Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory

25

26        [6]  As discussed above, the Court will dismiss defendants Maya Benjamin and Janet
     MacFarlane for lack of personal jurisdiction; consequently, the Court does not address
27   herein the RIRIC defendants' arguments under Rule 9(b) with respect to those two
     defendants.  The Court notes, however, that the FAC contains no particularized allegations
28   of fraud or negligent misrepresentation as to either such defendant.

14

1    or the absence of sufficient facts alleged under a cognizable legal theory.  See Balistreri v.

2    Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In analyzing a motion to dismiss,

3    a district court must accept as true all material allegations in the complaint, and construe

4    them in the light most favorable to the nonmoving party.  See NL Industries, Inc. v. Kaplan,

5    792 F.2d 896, 898 (9th Cir. 1986).  "To survive a motion to dismiss, a complaint must

6    contain sufficient factual material, accepted as true, to 'state a claim to relief that is

7    plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly,

8    550 U.S. at 570).  "Factual allegations must be enough to raise a right to relief above the

9    speculative level[.]"  Twombly, 550 U.S. at 555.  Courts "are not bound to accept as true a

10   legal conclusion couched as a factual allegation."  See Iqbal, 129 S. Ct. at 1950 (internal

11   quotation and citation omitted).

12       Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with

13   particularity the circumstances constituting fraud or mistake," Fed R. Civ. P. 9(b), and

14   requires "an account of the 'time, place, and specific content of the false representations as

15   well as the identities of the parties to the misrepresentations,'" Swartz, 476 F.3d at 764.

16   "Malice, intent, knowledge, and other conditions of a person's mind may be alleged

17   generally."  Fed. R. Civ. P. 9(b).

18       Here, the FAC identifies with the requisite specificity the allegedly fraudulent

19   statements made by Manoj Benjamin and RIRIC (see, e.g., FAC ¶¶ 184, 199, 227), as well

20   as said defendants' scienter (see, e.g., FAC ¶¶ 191, 203, 236), and, as discussed above,

21   includes uncontroverted allegations that RIR Holdings Corp., RIR Real Estate, and Royal

22   Garden are the alter egos of RIRIC, thus making all said corporate entities equally liable.

23       As to Anjula Benjamin, the FAC alleges that certain of the plaintiffs spoke with said

24   defendant (see FAC ¶¶ 62, 93), but the FAC identifies no particular false statement made

25   by her.[7]  Rather, plaintiffs, in their opposition, argue Anjula Benjamin is liable for RIRIC's

26   _____

27       [7]  Although, as discussed above in connection with the issue of personal jurisdiction,
     the Kudva's declaration includes allegations of fraudulent or misleading statements made
28   by Anjula Benjamin (see Kudva Decl. ¶¶ 5, 9-11), such material may not be considered to
     determine the sufficiency of plaintiffs' fraud and negligent misrepresentation claims, as

15

1  fraudulent statements because they "acted as a group in preparing and releasing some of

2  the fraudulent statements, e.g., the fraudulent press releases and marketing materials."

3  (See Opp. 27:21-23.)  In Wool v. Tandem Computers, Inc., 818 F.2d 1433 (9th Cir. 1987),

4  the Ninth Circuit held:

> In cases of corporate fraud where the false or misleading information is
> conveyed in . . . press releases, or other "group published information," it
> is reasonable to presume that these are the collective actions of the
> officers.  Under such circumstances, a plaintiff fulfills the particularity
> requirement of Rule 9(b) by pleading the misrepresentations with
> particularity and where possible the roles of the individual defendants in
> the misrepresentations.

9  See id. at 1440 (citations omitted) (applying presumption to "narrowly defined group of

10  officers who had direct involvement not only in the day-to-day affairs of [defendant

11  company] in general but also in [defendant company's] financial statements in particular");

12  see also Swartz, 476 F.3d at 764 (holding "there is no absolute requirement that where

13  several defendants are sued in connection with an alleged fraudulent scheme, the

14  complaint must identify false statements made by each and every defendant" (emphasis in

15  original)).  To meet the requirements of Rule 9(b), however, "a plaintiff must, at a minimum,

16  identify the role of each defendant in the alleged fraudulent scheme."  Id. at 765.[8]

17    Although the FAC alleges that Anjula Benjamin was an officer of RIRIC (see FAC

18  ¶ 25), the FAC contains only the most conclusory allegations regarding said individual

19  defendant's involvement in the creation of RIRIC's press releases and marketing materials,

20  and in the day-to-day affairs of RIRIC (see, e.g. FAC ¶ 341 (alleging "each of the

21  [d]efendants authorized and directed the preparation of false and misleading RIRIC press

22  releases and marketing materials"); FAC ¶ 288 (alleging "Individual Defendants" exercised

23  "control of" corporate defendants).  Consequently, the FAC fails to allege a sufficient basis

24  _____

25  "[g]enerally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any
material beyond the complaint," see Hal Roach Studios, Inc. v. Richard Feiner & Co., 896

26  F.2d 1542, 1555 n.19 (9th Cir. 1990).

27    [8] Defendants question whether the "group pleading" doctrine survived the passage
of the Private Securities and Litigation Reform Act ("PSLRA").  (See Reply 12:2-5.)  The
PSLRA's pleading requirements, however, are applicable exclusively to "securities fraud

28  actions."  See 15 U.S.C. § 78u-4(b).

1   to warrant application of the "group published information" presumption.

2       Accordingly, plaintiffs fraud and negligent misrepresentation claims are subject to

3   dismissal as against defendant Anjula Benjamin.

4                                   **CONCLUSION**

5       For the reasons stated above:

6       1.      The RIRIC defendants' motion to dismiss is GRANTED in part and DENIED in

7   part, as follows:

8               a.      To the extent the motion seeks dismissal of the FAC for lack of personal

9   jurisdiction as to Maya Benjamin and Janet MacFarlane, the motion is hereby GRANTED;

10              b.      To the extent the motion seeks dismissal of the FAC's fraud and

11  negligent misrepresentation claims against Anjula Benjamin, the motion is hereby

12  GRANTED; and

13              c.      In all other respects, the motion is hereby DENIED.

14      2.      To the extent plaintiffs request leave to amend their pleadings to cure the

15  above-noted deficiencies in their fraud and negligent misrepresentation claims, such leave

16  is hereby GRANTED.

17      3.      Plaintiff's Second Amended Complaint, if any, shall be filed no later than

18  February 25, 2011.

19      4.      The Case Management Conference scheduled for February 18, 2011 is

20  hereby CONTINUED to April 1, 2011.

21

22      **IT IS SO ORDERED.**

23  Dated: February 11, 2011

24                                  MAXINE M. CHESNEY
                                    United States District Judge

25

26

27

28

17